# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA BAKER, | : | Civil No. 1:21-CV-901 |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | **(Magistrate Judge Carlson)** |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.   Introduction

In the instant case we most assuredly do not write upon a blank slate. Quite the contrary, this Social Security appeal has a painfully protracted procedural history spanning nearly a decade, marked by three separate Administrative Law Judge (ALJ) decisions coupled with a prior remand order by this court. In the course of these administrative proceedings, an extraordinarily voluminous and detailed record has been amassed spanning some 2,576 pages. (Tr. 1-2,576). The sheer volume of this record presented particular challenges for the ALJ who conducted Baker's most

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

recent administrative hearing, and in Baker's current appeal of the agency's third adverse disability determination, the plaintiff argues that the ALJ erred in numerous respects in the assessment and evaluation of this extensive record. Specifically, Baker contends, in part, that this latest ALJ decision failed to adequately account for more than fifty physical impairments identified by the ALJ when assessing Baker's capacity to work.

While we do not in any way minimize the difficulty of the task confronting the ALJ in this case, we believe that this contention has merit and warrants a remand for further consideration of this case by the Commissioner. We reach this conclusion mindful of the fact that Social Security appeals are judged by a deferential standard of review, but the courts have imposed a clear burden of articulation upon an ALJ in order to facilitate this review. At a minimum, this articulation responsibility means that the ALJ's decision must provide a logical nexus between any factual findings and ultimate functional capacity and disability determinations. This principle applies with particular force when a claimant's disability claim rests upon an assessment of the combined effects of a myriad of physical and emotional impairments. An ALJ confronted with a complex and multi-facetted medical history like that presented by Ms. Baker, must make specific, well-articulated findings in order to deny a claim for

benefits. Failure to fully address this constellation of medical impairments may compel a remand of the case for further consideration by the Commissioner.

So it is here.

Laura Baker has been seeking disability benefits since 2013, citing an array of emotional and physical impairments. Over the past decade, it has repeatedly been determined that Baker's emotional impairments are severe, even if there has been some dispute regarding whether, standing alone, they are disabling. Against the backdrop of these undeniably severe mental impairments, we find that there has been an internally inconsistent treatment of Baker's physical impairments which now compels a remand of this case.

Most recently, ALJs have addressed disability claims submitted by Baker in 2019 and 2021. The 2019 ALJ decision found that Baker experienced a series of severe physical impairments which restricted her physically to a limited range of light work. Two years later, in 2021, another ALJ found that none of these physical impairments previously cited as severe were, in fact, severe. Instead, the 2021 ALJ decision concluded that Baker was experiencing a staggering array of more than fifty physical impairments, none of which reached the *de minimis* severity threshold impairment prescribed by Social Security regulations. Moreover, while the ALJ's 2021 decision concluded in a sweeping fashion that none of these medical conditions

3

met the minimal standard of severity, which simply required a showing of "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities," McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004), the ALJ's 2021 decision stated that all of these fifty physical impairments were being taken into account when fashioning a residual functional capacity (RFC) assessment for Baker. (Tr. 484). Yet, notwithstanding the assertion that Baker's fifty acknowledged physical impairments were being taken into account in determining whether she retained the physical capacity to work, the ALJ's decision made no accommodation for these physical impairments, stating instead that Baker had "the residual functional capacity to perform a full range of work at all exertional levels." (Tr. 486).

In our view, more is needed here. The ambiguities and inconsistencies in the consideration of these physical impairments, when coupled with Baker's undisputed mental impairments, are not adequately addressed, analyzed, or even fully acknowledged at this juncture. Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.    **Factual Background an Procedural History**

The appeal raises a series of legal issues presented against the backdrop of a 2,576 page administrative record. However, because we have determined that a

remand is necessary due solely to the failure to sufficiently address the plaintiff's physical impairments, a matter which did not receive adequate consideration in the ALJ's decision, we will focus upon this issue when assessing the medical evidence.

This case has a lengthy and complex procedural history. Ms. Baker initially sought disability benefits in 2007, but her application was denied by an ALJ and Baker did not elect to further pursue review of that denial decision. (Tr. 476). Some six years later, on March 25, 2013, Baker filed an application for supplemental security benefits, alleging an onset of disability beginning on May 1, 2010. (Tr. 11). A hearing was conducted on this application on February 4, 2015, nearly two years later. (Tr. 26-51). On May 13, 2015, an ALJ denied this disability application in a decision which focused exclusively upon Baker's emotional impairments. (Tr. 8-22). On this score, the ALJ found that Baker suffered from an array of severe mental impairments including bi-polar disorder, mood disorder, and polysubstance abuse disorders, but concluded that she retained the ability to perform some work. (Id.) Baker appealed this adverse decision denying her application for benefits and on April 30, 2019, this court reversed the decision of the ALJ and remanded this case for further consideration by the Commissioner, citing an inadequate analysis of the medical treating source opinion regarding the severity of Baker's emotional impairments. (Tr. 548-58).

In the meanwhile during the nearly four-year period while this first case was pending, on July 27, 2017, Baker filed another application for supplemental security income benefits alleging an onset of disability beginning on May 14, 2015. (Tr. 595). A hearing was conducted on this second application on October 22, 2018, (Tr. 595) and this application was denied by an ALJ on January 11, 2019. (Tr. 592-609). This 2019 ALJ decision reaffirmed that Baker's bi-polar disorder, mood disorder, anxiety, and drug dependence disorder were all severe impairments. (Tr. 597). However, after a careful review of the then-existing clinical evidence, the ALJ also concluded that Baker suffered from a number of severe physical impairments including asthma, bilateral plantar fasciitis, obstructive sleep apnea, secondary erythrocytosis, and hepatitis. (Tr. 597-98). In recognition of these well-documented severe physical impairments, in 2019 the ALJ confined Baker to a limited range of light work with restrictions on the use of her lower extremities, (Tr. 601), but denied her application for benefits. (Tr. 608-09). Baker was seeking review of this 2019 decision when her the denial of her prior application was reversed by this court and that earlier application was remanded by the district court for further consideration by the Commissioner.

In light of the district court decision remanding Baker's first application for benefits to the Commissioner for further consideration, on May 28, 2020, both of

these applications were consolidated for further proceedings. (Tr. 587-90). On October 28, 2020, an ALJ conducted a third administrative hearing in Baker's case. (Tr. 505-42). Following this hearing, on January 22, 2021, the ALJ issued a third decision in Baker's case, once again denying her disability benefit application. (Tr. 473-97).

In this decision, the ALJ first determined that Baker had not engaged in substantial gainful activity since her March 2013 application date. (Tr. 478). At Step 2 of the sequential analysis which governs Social Security disability determinations, the ALJ once again confirmed that Baker suffered from the following severe emotional impairments: mood/anxiety disorder, atypical mood disorder, substance induced mood disorder, bipolar disorder, anti-social personality disorder, major depressive disorder, panic disorder and personality disorder. (Tr. 479). The ALJ also identified a single severe physical impairment experienced by Baker—bilateral mixed hearing loss. (Id.) However, the ALJ did not identify any of the other severe impairments previously found by an ALJ in Baker's 2019 disability decision as severe conditions in this 2021 decision. (Id.)

Instead, the ALJ reached a series of striking conclusions. First, the ALJ found that Baker suffered from more than fifty physical impairments, stating that:

> The claimant's records also reflect diagnosis and treatment for degenerative disc and joint disease of the cervical spine (Exhibit

7

B27F), obesity (Exhibits B22F and B27F), obstructive sleep apnea (Exhibit B27F), asthma (Exhibits B10F and B27F), seasonal allergic rhinitis (Exhibits B24F, B27F and B28F), acute bronchitis (Exhibit B27F), bilateral temporomandibular joint disorder (Exhibit B24F), otitis media/externa (Exhibit B24F), dysfunction Eustachian tube (Exhibits B10F, B24F and B28F), status post myringotomy tubes placement (Exhibits B16F, B24F and B28F), impacted cerumen (Exhibit B28F), otalgia (Exhibits B24F and B28F), acute upper respiratory infection (URI) (Exhibits B8F and B27F), acute sinusitis (Exhibits B10F and B27F), bilateral conjunctivitis (Exhibit B27F), hepatitis C (Exhibits B10F and B22F), hepatic fibrosis (Exhibit B22F), gastroesophageal reflux (GERD) (Exhibit B27F), partial thickness ulnar collateral ligament tear at the humeral attachment, status post right elbow collateral ligament reconstruction (Exhibits B10F and B17F), left ankle deltoid ligament sprain (Exhibit B20F), secondary erythrocytosis secondary to smoking (Exhibit B27F), genital herpes (Exhibit B8F), acute groin abscess (Exhibit B27F), acute thrush (Exhibit B27F), boil left labium/vulva (Exhibit B27F), right ankle sprain (Exhibit B27F), idiopathic urticaria (Exhibits B24F and B28F), allergic contact dermatitis (Exhibit B24F), dermatitis (Exhibit B22F), excision of benign cyst (eye) (Exhibit 22F), opioid dependence in remission (Exhibits B10F, B23F and B29F), polysubstance dependence in remission (Exhibits B6F, B10F and B12F), cocaine dependence in remission (Exhibit B27F), substance misuse disorder in remission (Exhibit B15F), right elbow pain (Exhibits B10F and B17F), visual changes (Exhibit B8F), insomnia (Exhibit B27F), bilateral temporomandibular joint pain (Exhibit B27F), edema/peripheral edema (Exhibit B27F), nocturnal hypoxemia (Exhibit B27F), advance sleep phase syndrome (Exhibit B27F), bruxism (Exhibit B27F), pelvic pain (Exhibit B27F), dyspareunia (Exhibit B27F), spasm of muscle (Exhibit B27F), headache (Exhibit B27F), sore throat (Exhibit B27F), neck pain (Exhibit B27F), cervicalgia (Exhibit B27F), rash/skin eruption (Exhibit B27F), nasal congestion (Exhibit B28F) and ear pain (Exhibit B28F).

(Tr. 479-80).

Remarkably, while finding that Baker suffered from this myriad of ailments, the ALJ concluded that none of these medical conditions met the *de minimis* statutory threshold required to define the conditions as severe impairments at Step 2 of this sequential analysis. (Tr. 497-84). Instead, the ALJ discounted the severity of all of these conditions—including the medical impairments previously found by another ALJ to be severe—opining that the conditions either were not medically determinable despite their diagnoses, or holding that impairments imposed no more than a minimal impact upon Baker's ability to work. (Id.) Thus, after documenting this constellation of physical impairments, the ALJ dismissed all fifty of these impairments as non-severe, stating:

> After review of the record, the undersigned concludes that there is no evidence that any of these conditions have either met the durational requirements of this program, or that they create any specific functional limitations regarding the claimant's ability to perform work related activities; thus, they are considered not "severe". Nevertheless, the undersigned has reviewed and considered all "severe" and non "severe" impairments in formulating the following residual functional capacity below, and, where appropriate, has included limitations to address the claimant's non "severe" impairments and subjective complaints (SSR 96-8p).

(Tr. 484).

Yet, while the ALJ indicated that all of Baker's fifty identified physical impairments were fully taken into account when fashioning a physical residual functional capacity (RFC) assessment for Baker, that RFC does not in any

9

discernable way address this sweeping array of impairments. Quite the contrary, the ALJ's decision expressly "finds that [Baker] has the residual functional capacity *to perform a full range of work at all exertional levels*." (Tr. 486) (emphasis added).

Having reached an RFC determination which was at odds with the record in these respects, the ALJ concluded at Step 4 that Baker could not perform her past relevant work, but found at Step 5 that she retained the ability to perform other jobs that existed in significant numbers in the national economy and denied this disability application. (Tr. 495-97).

This appeal followed. (Doc. 1). On appeal, Baker raises a host of challenges to the ALJ's decision, and specifically argues that the ALJ failed to adequately analyze and address her myriad physical limitations and impairments. We find that the ALJ's analysis of this issue is deficient in that it is inadequate and internally inconsistent.  On these facts, as discussed below, we conclude that the ALJ's burden of articulation has not been met in this appeal, and therefore this case will be remanded for further consideration and evaluation of the medical evidence.

III.   **Discussion**

A.   **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

12

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R.  §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).   In  making  this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be

set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical

16

opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In

this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

18

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

C.   **Step 2 Analysis**

In this case we are called upon to consider whether the ALJ erred at Step 2 of this sequential analysis when the ALJ deemed none of Baker's fifty physical impairments to be severe. We must also consider whether the ALJ then sufficiently considered the combined effects of all of these physical impairments when crafting an RFC for Baker.

In this setting, a series of special considerations are triggered. Step 2 of this sequential analysis is often the first substantive benchmark an ALJ must address and is governed by familiar legal standards:

> With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimis* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec.,370

F.3d 357, 360 (3d Cir.2004); <u>Newell v. Comm. of Soc. Sec</u>., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' <u>Id</u>.*"* <u>Velazquez v. Astrue</u>, No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' <u>McCrea v. Comm'r of Soc. Sec</u>., 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. <u>Id</u>. at 361. Rather, ... [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' <u>Id</u>.*"* <u>Kinney v. Comm'r of Soc. Sec</u>., 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." <u>McCrea v. Commissioner of Social Sec</u>., 370 F.3d 357, 360 (3d Cir.2004).

<u>Dotzel v. Astrue</u>, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22, 2014). Furthermore,

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. <u>See Nosse v. Astrue</u>, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

<u>McClease v. Comm. of Soc. Sec</u>., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); <u>see also Salles v. Comm. of Soc. Sec</u>., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

20

<u>Stouchko v. Comm'r of Soc. Sec.</u>, No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014). Simply put, "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 ('Great care should be exercised in applying the not severe impairment concept')).

It is against these benchmarks that we assess the instant case.

**D.     <u>This Case Will Be Remanded.</u>**

Recognizing the unusual procedural posture of this case, which involves a threshold Step 2 determination that more than fifty identified physical impairments suffered by Baker were not severe, we believe that a remand of this case for a more thorough consideration of this claim is appropriate. We reach this conclusion because we recognize, as many courts have acknowledged, that this Step 2 analysis is simply a *de minimis* screening device for disposing of plainly groundless claims. Given the limited role which a Step 2 evaluation plays in this disability determination process, we are cautioned that all reasonable doubts regarding the sufficiency of a claim at Step 2 are to be resolved in favor of the claimant. <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 547 (3d Cir. 2003).

In this case, we believe that there is an inherent confusion and contradiction in the ALJ's Step 2 analysis of the plethora of medical impairments suffered by Baker and the subsequent decision to craft a physical RFC for Baker which expressly "finds that [Baker] has the residual functional capacity *to perform a full range of work at all exertional levels*." (Tr. 486) (emphasis added). These ambiguities and inconsistencies stem from several sources.

First, it is difficult to reconcile the severity findings in the 2021 ALJ decision, which with one exception found that Baker suffered from no severe physical impairments, with the well-documented conclusion in the 2019 ALJ decision which determined that Baker suffered from a series of severe physical impairments including asthma, bilateral plantar fasciitis, obstructive sleep apnea, secondary erythrocytosis, and hepatitis. (Tr. 597-98). This incongruity is heightened when one considers that one of the severe impairments found by the ALJ in 2019—plantar fasciitis—does not even appear to be listed among the more than fifty physical impairments suffered by Baker identified in the 2021 ALJ decision. Moreover, the 2021 ALJ decision does not seem to address, analyze, or even fully acknowledge this discrepancy.

In addition, the ALJ's Step 2 analysis of this myriad of impairments is suspect on several levels. At the outset, the ALJ's Step 2 finding that many of Baker's

impairments were not medically determinable is suspect. On this score, the ALJ

opined that the following identified impairments were not medically determinable:

> [R]ight elbow pain (Exhibits B10F and B17F), visual changes (Exhibit B8F), insomnia (Exhibit B27F), bilateral temporomandibular joint pain (Exhibit B27F), edema/peripheral edema (Exhibit B27F), nocturnal hypoxemia (Exhibit B27F), advance sleep phase syndrome (Exhibit B27F), bruxism (Exhibit B27F), pelvic pain (Exhibit B27F), dyspareunia (Exhibit B27F), spasm of muscle (Exhibit B27F), headache (Exhibit B27F), sore throat (Exhibit B27F), neck pain (Exhibit B27F), cervicalgia (Exhibit B27F), rash/skin eruption (Exhibit B27F), nasal congestion due to pollen (Exhibit B28F) and ear pain (Exhibit B28F).

(Tr. 480).

With respect to these impairments it is well settled that:

> To be medically determinable, an impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–4p, 1996 WL 374187 at *1. "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone." Id. at 2. Where an ALJ finds that an impairment is not medically determinable, this impairment is not considered in the later steps of the sequential evaluation. Therefore, when a finding that an impairment is not medically determinable is not supported by substantial evidence at step two, such an error undermines the finding of each subsequent step of the sequential evaluation process. See e.g., Crayton v. Astrue, No. 4:10–CV–01235, 2011 U.S. Dist. Lexis 139414, 54 (M.D.Pa. Sept. 30, 2011)("The failure of the administrative law judge to find the above noted conditions as medically determinable impairments, or to give adequate explanation for discounting them, makes his decisions at steps two and four of the sequential evaluation process defective.").

Moon v. Colvin, No. 1:15-CV-00362, 2015 WL 7769418, at *7 (M.D. Pa. Nov. 9, 2015), report and recommendation adopted, No. 1:15-CV-362, 2015 WL 7755664 (M.D. Pa. Dec. 2, 2015). In this case while the ALJ dismissed all of these impairments as being nothing more than a recital of subjective complaints which were not medically determinable, our own review of Baker's treatment records suggest that the diagnosis of at least some of these conditions was based upon more than mere subjective complaints by Baker. Therefore, dismissal of the impairments at Step 2 as not medically determinable may have been prejudicially premature.

Further, the ALJ's Step 2 severity analysis seems at odds with the controlling legal benchmarks governing Step 2 evaluations. Those legal guideposts emphasize for us that this is a *de minimis* screening standard and "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." McCrea, 370 F.3d at 360-61. In the instant case, the ALJ's Step 2 severity analysis seems to go well beyond the minimal screening role contemplated by the law. For example, the ALJ found that Baker suffered from degenerative disc disease, and Baker testified how this condition impaired her ability to work. Given the *de minimis* screening function performed at Step 2, such proof has often been held sufficient to meet the claimant's burden of proof at this stage of the disability analysis. See generally Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001).

24

Likewise, it is undisputed that Baker suffered from asthma, another medical condition which is routinely considered a severe impairment at Step 2 of any disability analysis. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 502 (3d Cir. 2009). Yet, the ALJ's decision dismissed both of these conditions as non-severe even though they had previously been found to be severe in a 2019 decision. More is needed here to reconcile these disparate outcomes.

But even if we accepted the ALJ's initial characterization of all fifty of these impairments as non-severe, there remains an unexplained incongruity in this decision which undermines confidence in the final analysis of this claim. In this 2021 decision, the ALJ indicated that all of Baker's fifty identified physical impairments were fully taken into account when fashioning a physical residual functional capacity (RFC) assessment for Baker. (Tr. 484). However, the physical RFC crafted by the ALJ does not in any discernable way address this sweeping array of impairments. Instead, the ALJ's decision expressly "finds that [Baker] has the residual functional capacity *to perform a full range of work at all exertional levels*." (Tr. 486) (emphasis added).

It is difficult to understand how these fifty physical impairments, taken together and in combination, could not have created at least some exertional limits upon Baker. And, in fact, the prior ALJ decision in 2019 expressly found that Baker

was subject to significant exertional limitations in that she was confined to a limited range of light work with restrictions on the use of her lower extremities. (Tr. 601). In the absence of some more thorough analysis of how this constellation of physical concerns affected Baker's ability to meet the physical demands of the workplace, this apparent incongruity remains unexplained and unaddressed.

Moreover, we find that the incomplete analysis of Baker's physical impairments is potentially prejudicial in this case, where it is undisputed that Baker also suffers from a series of severe emotional impairments. In our view, a more complete analysis of Baker's physical limitations, coupled with an assessment of her acknowledged mental impairments, could potentially alter the balance of proof in this case in a material way. Given these potentially prejudicial ambiguities and inconsistencies in the ALJ consideration of Baker's physical impairments, more is needed here to sustain the Commissioner's denial of this claim. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here. Therefore, the ALJ's burden of articulation is not met and this matter will be remanded for further consideration by the Commissioner.

Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand. Further, having found that a remand is justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); see also Lawrence v. Colvin, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

## III.  **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration by the Commissioner.

An appropriate order follows.

_/S/ Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge

DATED: September 29, 2022